UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-cv-22496-LEIBOWITZ

ERNESTO DELGADO DUARTE,

     *Petitioner,*

v.

MIAMI ICE FIELD OFFICE DIRECTOR,

     *Respondent.*

———————————————————————/

## ORDER

**THIS CAUSE** is before the Court upon the Petition for Writ of Habeas Corpus ("the Petition") [ECF No. 1]. Petitioner Ernesto Delgado Duarte ("Petitioner" or "Duarte") seeks his immediate release or, in the alternative, an order requiring Respondent Miami Ice Field Office Director ("Respondent" or "the Government") to provide Petitioner with "notice and a hearing where he can confront and oppose removal to any alternative third country that agrees to accept [him], if one is identified." [ECF No. 1 at 21]. For the reasons set forth below, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a Cuban national. [ECF No. 1 ¶ 15]. He obtained lawful permanent residency on July 22, 2015. [*Id.*]. In 2019, Petitioner was convicted of one count of forgery under Texas state law and received a sentence of six months imprisonment. [ECF No. 5 at 2]. During his sentence, Immigration and Customs Enforcement ("ICE") Enforcement Removal Operations ("ERO") encountered Petitioner, determined that he was unlawfully present in the United States, and took him into custody. [*Id.* at 3]. On October 28, 2019, ICE ERO issued the Petitioner Notice to Appear, charging him with inadmissibility under INA § 237(a)(2)(A)(i) as an alien convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one

1

year or longer may be imposed.  [*Id.*].  An immigration judge subsequently ordered Petitioner's removal to Cuba, and Petitioner returned to Cuba in December of 2019.  [*Id.*].  While in Cuba, Petitioner was accused him of being "an 'anti-social' and 'counter-revolutionary' youth" and was subsequently harassed and interrogated.  [ECF No. 1 ¶ 20].  Accordingly, Petitioner "sought refuge" in the United States.  [*Id.*].

On April 4, 2022, Customs and Border Patrol ("CBP") encountered Petitioner about five miles from a port of entry in San Luis, Arizona and issued Petitioner a Notice of Intent/Decision to Reinstate Prior Order and a warrant for his arrest.  [ECF No. 5 at 3].  On May 16, 2022, Petitioner pled guilty to unlawful reentry.  [*Id.* at 4].  Petitioner was sentenced to time served and 36 months of supervised release.  [*Id.*].  ICE released Petitioner from its custody on September 15, 2022.  [*Id.*].  The OSUP set forth a laundry list of conditions "[a]ny violation" of which could have resulted in Petitioner's re-detention and criminal prosecution.  [ECF No. 5-13 at 3].

More than three years later, on October 12, 2025, ICE ERO encountered Petitioner and issued him a warrant for his arrest, a Warrant of Removal/Deportation, and a Warning to Alien Ordered Removed or Deported.  [*Id.*].  On October 12, 2025, ICE ERO issued a notice ("the Notice") revoking Petitioner's Order of Supervision ("OSUP").  [*Id.*].  In relevant part, the Notice provided that:

> [I]t has been determined that you will be detained in the custody of [ICE] at this time.  This decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case.  ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.  Based on the above and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.  You will be promptly afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that your removal is unlikely.

[ECF No. 5-18 at 1].  On or about November 22, 2025, Petitioner was referred for interview to U.S. Citizenship and Immigration Services on December 4, 2025.  [ECF No. 5 at 5].  Petitioner requested review by an Immigration Judge.  [*Id.*].  On January 27, 2026, an Immigration Judge made a positive

credible fear determination and concluded that the alien was to be placed in "withholding only" proceedings pursuant to 8 C.F.R. § 1208.31(g)(2). [*Id.*]. An Immigration Judge commenced the withholding-only proceedings on January 31, 2026, which remain ongoing. [*Id.*].

## DISCUSSION

Petitioner asserts four grounds for relief: (1) a violation of 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) a violation of Petitioner's due process rights under the Fifth Amendment based on the arbitrary revocation of Petitioner's Order of Supervision and Petitioner's subsequent detention; (3) a violation of Petitioner's due process rights under the Fifth Amendment, as interpreted by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), based on the Government's failure to provide Petitioner notice and an opportunity to be heard prior to his detention; and (4) a violation of the *Accardi* doctrine, based on the Government's failure to abide by the procedures set forth in 8 C.F.R. §§ 241.13 and 241.4(l). Before assessing the merits of these arguments, the Court must first determine whether it may exercise jurisdiction over the Petition.

## I. Jurisdiction

As a threshold matter, the Government claims that this Court lacks jurisdiction to hear the Petition pursuant to the jurisdiction-stripping provision of 8 U.S.C. § 1252(g). [ECF No. 6 at 3–5]. The Government is half-correct here.

Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court has narrowly interpreted Section 1252(g). *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("In fact, what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take:

3

her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." (emphasis removed)). Contrary to the Government's position, this section "does not cover the universe of deportation claims." *Camarena v. Dir., Immigr. & Customs Enf.*, 988 F.3d 1268, 1272 (11th Cir. 2021). The Eleventh Circuit has recognized the Supreme Court's limited application of Section 1252(g) to "three specific actions" only. *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). Indeed, the *Jennings* Court expressly cautioned against interpreting "arising from" to mean anything more than these three discrete actions. 583 U.S. at 294.

The Government is right that there is no jurisdiction over its decision to revoke the Order of Supervision. *See Barrios v. Ripa*, No. 25-cv-22644, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025) (Gayles, J.) ("The decision to revoke Petitioner's OSUP, for the stated purpose of executing his removal order, clearly falls under the purview of § 1252(g)."). The same is true for Petitioner's request to enjoin his removal or his transfer outside the jurisdiction of this Court. *See Lezama Garcia v. Miami Field Off. Dir.*, No. 25-cv-23169, 2026 WL 632351, at *3 (S.D. Fla. Mar. 6, 2026) (Altman, J.) (lacking jurisdiction over the petitioner's request to stay his removal or stay his transfer under Section 1252(g)).

But the core of Petitioner's case contains much more than this. The crux of the Petition "challenges the manner in which the government revoked [Petitioner's] release," allegedly done in a way without due process and in violation of agency regulations. [*See* ECF No. 7 at 9]. Jurisdiction certainly lies when reviewing whether agency regulations and procedures were properly followed. *See Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam). This Court is not alone on this question. *See, e.g.*, *Fuentes v. Ripa*, No. 26-cv-134, 2026 WL 717982, at *2 (M.D. Fla. Mar. 16, 2026) ("The crux of Fuentes's claims is that ICE failed to comply with its regulations and due process when it revoked his OSUP. . . . Thus, the Court finds that [Section] 1252(g) does not bar Fuentes's claims."); *Barrios*, 2025 WL 2280485, at *5 (similar); *Lezama Garcia*, 2026 WL 632351, at *4 (similar).

4

**II.     Revocation of OSUP and Subsequent Detention**

Petitioner contends that the Government's failure to abide by its own regulations and its broader failure to comport with the requirements of due process mandate Petitioner's release.  The Court agrees.

The Government has promulgated regulations governing the revocation of release under 8 C.F.R. §§ 241.13(i) and 241.4(l).  The latter section serves as a general purpose regulation applicable to any alien the Government has deemed inadmissible under the INA.  8 C.F.R. § 241.13(a).  By contrast, the former section "establishes a special review process for aliens otherwise subject to § 241.4," *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025), and applies "after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  8 C.F.R. § 241.13(a).  Section 241.13 sets forth detailed procedures to determine whether an alien has made a requisite showing, culminating in a "written decision based on the administrative record, including any documentation provided by the alien."  *See id.* § 241.13(d)–(g).   Thus, "[r]evocation under § 241.13(i) applies only to aliens released under § 241.13(g)."  *Grigorian*, 2025 WL 2604573, at *5.  Otherwise, an alien is deemed released under § 241.4 and is entitled to the procedures set forth in that section.

The distinction between these two sections matters because the grounds for revocation under § 241.13 are more restrictive than those articulated under § 241.4.  *Id.*  Section 241.13(i)(1) provides that "[a]ny alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody" and that the alien "may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released."  In turn, 8 C.F.R. § 241.13(i)(2) provides that

5

"[t]he Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  Freewheeling revocation is not permitted; rather, an alien must "be notified of the reasons for revocation of his or her release" and USCIS must "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  Finally, "if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) [sic] of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal."  *Id.* § 241.13(i)(2).

Turning then to 8 C.F.R. § 241.4, the reader finds a similar suite of procedural protections. Pursuant to § 241.4(l)(1), an alien released under an OSUP who violates his conditions of release may be returned to custody, provided that the alien must be "notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  Alternatively, the Executive Associate Commissioner and district directors retain "authority, in the exercise of discretion, to revoke[,] release[,] and return to Service custody an alien previously approved for release."  *Id.* § 241.4(l)(2).  However, unlike revocation under § 241.13(i), which is made permissible only where the alien has violated a condition of release or the Service has determined that "changed circumstances" make removal likely in the "reasonably foreseeable future," discretionary release under § 241.4(l) is authorized where "in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  *Id.*

To sum up, revocation of an alien released under § 241.13 is proper only where the alien has violated a condition of release or where, "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." By contrast, an alien released under § 241.4 may be re-detained for the additional reasons enumerated above. In either case, however, the Government must provide an alien notice of the reasons for the revocation of his release and an "informal interview" designed "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i), 241.4(l); *see Grigorian*, 2025 WL 2604573, at *6 (holding that procedural requirements established under § 241.4(l)(1) apply to discretionary revocations under § 241.4(l)(2). Although in many cases the applicability of § 241.13 is dispositive of a habeas petitioner's case, the Government's showing here demonstrates that it failed to satisfy the requirements of due process and its own regulations regardless of the section under which it originally released Petitioner.

To start, Respondent has introduced no evidence that it provided Petitioner the informal interview required under its regulations. Respondent's affidavit does assert in a conclusory fashion, without any detail or documentary support, that "[o]n October 12, 2025, ICE ERO revoked Petitioner's Order of Supervision, to effectuate removal, pursuant to 8 C.F.R. §241.4 and conducted an informal interview." [ECF No. 5-6 ¶ 24]. Yet, as Respondent itself concedes, "self-serving" attestations lacking "any evidence or substantiation in the record" do not merit "consideration by this Court." [ECF No. 5 at 13 (quoting *Mohamud v. Lynch*, No. 17-20281-CIV, 2017 WL 11696997, at *4 (S.D. Fla. Mar. 23, 2017), *report and recommendation adopted*, No. 17-20281 CIV, 2017 WL 11696996 (S.D. Fla. June 30, 2017))]; *see also Harewood v. Miami-Dade Cnty.*, No. 1:16-CV-21874-KMM, 2018 WL 1156010, at *4 (S.D. Fla. Mar. 1, 2018), *aff'd*, 780 F. App'x 748 (11th Cir. 2019) ("The Court gives little weight to Plaintiff's self-serving affidavit.") (Moore, J.). The dearth of evidence on this critical point is all the more stark given Respondent's otherwise admirable efforts to aggregate and submit a

complete documentary record of Petitioner's interaction with the Government.  [*See generally* ECF Nos. 5-1–26].

Even more tellingly, Respondent does not even attempt to argue that Petitioner received the process he was due under the Fifth Amendment or Respondent's regulations.[1]  So, even if the Court were to accept the Government's hand-waiving assertion that Petitioner received an informal interview, Respondent has offered no basis whatsoever upon which to conclude that the interview was conducted in a manner that discharged the Government's constitutional and regulatory obligations.  *See, e.g.*, *Grigorian*, 2025 WL 2604573, at *8 (explaining that an informal interview must occur after an alien is afforded notice of the reasons for the revocation of his release and taken into custody); *id.* (holding that informal conversation with officer who first encounters alien fails to satisfy informal interview requirement).  Moreover, Respondent's affidavit suggests that the informal interview took place, if at all, either simultaneously with or on the same day as the revocation of his release, which strongly suggests that Petitioner lacked a "meaningful opportunity to understand the reasons for revocation or gather information to respond accordingly."  *Samhan v. Noem*, No. 25-CV-25618, 2026 WL 911290, at *6 (S.D. Fla. Apr. 2, 2026) (Bloom, J.).

Finally, the procedural adequacy of any interview Petitioner might have received was vitiated by the hollow language of the Government's notice, which merely asserted that the Government was revoking Petitioner's OSUP based on "changed circumstances" and a purported determination that "there [was] a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." [ECF No. 5-18 at 1].  That language is wholly inadequate to apprise Petitioner of the reasons for the revocation of his release so as to afford him a meaningful opportunity to contest the revocation.  *See Grigorian*, 2025 WL 2604573, at *8; *see also Zhang v. Bondi*, No. 25-CV-10418 (JPO), 2026 WL 42778, at

---

[1]    Instead, Respondent merely argues that Petitioner's detention is proper because he is an "inadmissible" alien, an argument that plainly ignores § 241.4's applicability to "inadmissible" aliens. [ECF No. 5 at 10].

*4 (S.D.N.Y. Jan. 7, 2026) (holding notice of revocation inadequate where notice merely asserted that revocation was "appropriate to enforce removal order" and collecting cases holding same).  Due process requires something more than boilerplate recitations before the state may deprive an individual of his Constitutional rights to liberty.

At least one court in this Circuit has held otherwise.  *See Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969, at *9 (M.D. Fla. Mar. 10, 2026) (holding that notice of revocation was constitutionally adequate where it simply "stat[ed] that [the petitioner's] supervision was ending so the agency could execute his final removal order").  The Court respectfully disagrees with that holding.  To see why, look to the text of the regulation itself.  Where the Government revokes an OSUP to facilitate an alien's removal, USCIS must determine, based on "changed circumstances," that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  In turn, § 241.13 calls for the "reasons for revocation of *his or her* release."  So, not just any reason justifying any revocation, but the *particular* reasons justifying the revocation of a *particular* alien's release.  Putting that all together, the regulation imposes (at a minimum) the feather-light burden of adducing some "reason" why "changed circumstances" make an alien's removal "reasonably foreseeable," which must be articulated with sufficient clarity and particularity to afford an alien a meaningful opportunity to respond to those reasons at an informal interview.

With that framework in mind, it is plainly no answer to the call of the regulation for the Government to say that "changed circumstances" make removal likely in the "reasonably foreseeable future" or, worse, that the alien is being detained for the purpose of removal.  Those are governmental interests masquerading as "reasons."  The Government's interest in removal say nothing about what

has *changed*, let alone what has changed in a *particular* alien's case.[2]   And here the particularity requirement is key because the notice precedes an informal interview at which an alien must be afforded a meaningful "opportunity to respond to the reasons for revocation stated in the notification."   *Id.* § 241.13(i)(3).   A notice that fails to apprise an alien of the particular reasons justifying the revocation of his release necessarily deprives the alien of his right to contest those reasons.  Where the Government cites "changed circumstances" writ large, an alien faces the daunting task of blindly guessing at the Government's reasoning—on pain of his liberty.  Due process does not require much, but it requires enough to thwart such an unseemly encounter with the awesome power of the state.  *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1027 (11th Cir. 2019) ("Procedural due process ordinarily requires decisions that would deprive a person of a liberty or property interest to be based on a modicum of evidence.").

As the Honorable Judge Rodolfo A. Ruiz II as held, "[t]he opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands."  *Grigorian*, 2025 WL 2604573, at *9 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)).   "In its most elemental formulation, 'the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'"  *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks omitted).   "The failure to provide Petitioner with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and

---

[2]      To the extent that the circumstances surrounding Petitioner's removal have changed, that change has been to the Government's detriment.  As Petitioner notes, relations between the United States and Cuba have only deteriorated since Petitioner's reentry.  [*See* ECF No. 1 ¶ 28 n.2].  The Government argues that evidence of that deterioration is wanting, but the proof is in the pudding: Respondent has detained Petitioner for more than half a year but has made no showing in this action that the Government is any closer to removing Petitioner than it was on day one of his detention.

the Fifth Amendment Due Process Clause." That failure "compels Petitioner's release." *Id.* (collecting cases).[3]

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition **[ECF No. 1]** is **GRANTED**.

2. Respondent is ordered to release Petitioner from custody on or before **May 20, 2026**, pursuant to the terms of his prior Order of Supervision.

3. The Clerk is **DIRECTED** to **CLOSE** this case.

4. Should the Government re-detain Petitioner after his release from custody, Petitioner may move to reopen this case and apply for expedited consideration of any habeas claims he may wish to assert.

**DONE AND ORDERED** in the Southern District of Florida on May 19, 2026.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    counsel of record

---

[3] Having found that Petitioner release is warranted on these grounds, the Court declines to reach Petitioner's argument under *Zadvydas*.